UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| EDWARD G. KALNA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:15-CV-519-HBG |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16]. Now before the Court is the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 20 & 21] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 & 23]. Edward G. Kalna ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

**I.      Procedural History**

On October 3, 2008, the Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), claiming a period of disability which began June 1, 2007. [Tr. 192-96, 197-203]. After a previous denial of benefits following a hearing before

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

an ALJ and a remand by the Appeals Council, a supplemental hearing was held before an ALJ on October 31, 2012. [Tr. 58]. On February 14, 2013, the ALJ found that the Plaintiff was not disabled. [Tr. 38-57]. The Appeals Council denied the Plaintiff's request for review of his DIB application [Tr. 1-3], but reversed the ALJ's decision regarding the Plaintiff's SSI application and found that the Plaintiff was disabled as of August 12, 2012 [Tr. 4-12]. Thus, the ALJ's decision became the final decision of the Commissioner as to the Plaintiff's DIB application and the Appeals Council's decision became the final decision of the Commissioner as to the Plaintiff's SSI application.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on November 23, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act with regard to the Plaintiff's DIB application. [Doc. 1].[2] The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner and whether the ALJ's findings are supported by substantial evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

---

[2] The Plaintiff's brief states that he disagrees with the ALJ's decision that the Plaintiff is not entitled to SSI or DIB. [Doc. 21 at 1]. However, the Appeals Council's decision, not the ALJ's decision, is the final decision of the Commissioner with regard to the Plaintiff's application for SSI, and the Appeals Council has rendered a favorable decision to the Plaintiff with regard to his SSI application. [Tr. 4-12]. Moreover, the Plaintiff's Complaint only seeks judicial review of the Commissioner's final decision as to the Plaintiff's DIB application. [Doc. 1]. Therefore, the Court will limit its review to the relief sought in the Complaint.

541, 544 (6th Cir. 2004); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

### III. ANALYSIS

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

3

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff alleges that the ALJ committed two errors. First, the Plaintiff submits that the ALJ should have found that the he meets or medically equals Listing 12.04. [Doc.

4

21 at 7-9]. Second, the Plaintiff contends that the ALJ's residual function capacity ("RFC") determination is not supported by substantial evidence. [*Id.* at 9-10]. The Court will address each argument in turn.

### A. Listing 12.04 – Affective Disorders

The Plaintiff argues that he satisfies the criteria of Listing 12.04 and that the ALJ's decision failed to appreciate the nature and extent of the Plaintiff's mental impairments.

The ALJ found that the combination of the Plaintiff's impairments, which, in relevant part, included bipolar disorder and attention deficit-hyperactive disorder ("ADHD"), caused more than a minimal effect on the Plaintiff's ability to perform work-related activities but were not of listing level severity. [Tr. 44-45].

At step three, a claimant may be found disabled if his impairment meets, or medically equals, one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c). Only when an impairment satisfies all of the listing's criteria will the impairment be found to meet a listed impairment. § 404.1525(d).

Affective disorders under Listing 12.04 are disorders "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. To meet or equal the listing, a claimant must satisfy the requirements of paragraphs A and B or the requirements of paragraph C. *Id.* Relevant to the Plaintiff's specific arguments, the Listing requires the following:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:

5

. . .

>> 2. Manic syndrome characterized by at least three of the following:
>> a. Hyperactivity; or
>> b. Pressure of speech; or
>> c. Flight of ideas; or
>> d. Inflated self-esteem; or
>> e. Decreased need for sleep; or
>> f. Easy distractibility; or
>> g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
>> h. Hallucinations, delusions or paranoid thinking;
>
> or
>
>> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
>
> AND
>
> B. Resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living; or
>> 2. Marked difficulties in maintaining social functioning; or
>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>> 4. Repeated episodes of decompensation, each of extended duration;
>
> OR
>
> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> . . .
>
>> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental

6

> demands or change in the environment would be predicted
> to cause the individual to decompensate[.]

*Id.*[3]

The Plaintiff maintains that he satisfies Listing 12.04 because he satisfies paragraphs (A)(2), Manic Syndrome, or (A)(3), Bipolar Syndrome, and paragraphs B(2) and B(3), as well as the criteria for paragraph C(2). [Doc. 21 at 8]. In support of his contention, he cites to treatment records from Peninsula Hospital in which he received outpatient therapy from February 14, 2006 through April 10, 2006, for substance abuse issues related to cocaine use, and inpatient treatment from April 27, 2007 through April 30, 2007, for suicidal ideation. [Tr. 264-95, 296-307]. Additionally, the Plaintiff cites to outpatient therapy records from Cornerstone of Recovery where the Plaintiff received treatment from June 1, 2007 through August 2, 2007. [Tr. 308-321].

The ALJ did not address the specific A criteria, but the Court finds that the Plaintiff has not met his burden in demonstrating that he satisfies the criteria for Manic Syndrome or Bipolar Syndrome. The Plaintiff argues that treatment records from Peninsula Hospital, which notate symptoms of sleeplessness, hyper energy, depression, hypomania, pressured speech, rambling, tangential thought process, racing thoughts, disruptiveness, agitation, and feelings of hopelessness and helplessness, among other symptoms, are demonstrative of the requisite criteria for paragraphs A(2) and A(3). [Doc. 21 at 5-6, 8 (citing Tr. 265-309)]. However, these records predate the Plaintiff's alleged onset date. *See Melius v. Colvin*, No. CV 15–10820, 2016 WL 633953, at *4 (E.D. Mich. Feb. 9, 2016) (noting that records predating an alleged onset date are generally of

---

[3] The Court notes that the changes to the Listing of Impairments, as well as other regulations cited throughout this Memorandum Opinion have recently been revised. The Court reviews the Commissioner's final decision using the rules that were in effect at the time the decision was issued. Thus, the criteria of Listing 12.04 herein reflect the listing's criteria prior to the rule change.

limited relevance) *adopted by* No. 15–CV–10820, 2016 WL 1104467 (E.D. Mich. Mar. 22, 2016). Moreover, the purpose of the Plaintiff's treatment, as well as a contributing factor to the symptoms reported, was substance abuse of crack cocaine. [Tr. 290, 296]. A claimant is not eligible for disability benefits where drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

Additionally, mental health records demonstrate that the Plaintiff was non-compliant with treatment recommendations. *See* 20 C.F.R. § 404.1530(a) (explaining that a claimant's failure to follow prescribed treatment may result in a denial of benefits). Upon discharge from outpatient treatment in April 2006, Peninsula Hospital recommended continued aftercare and support programs for the Plaintiff's substance abuse issues, as well as treatment of his bipolar disorder with medication, neither of which was adhered to by the Plaintiff. [Tr. 265, 296, 409]. When the Plaintiff sought outpatient treatment over a year later at Cornerstone of Recovery in June 2007, the Plaintiff reported he was not on any medications and explained that he did not believe he suffered from bipolar disorder or ADHD. [Tr. 319]. Furthermore, he explained that he had felt better in the last month than he had ever felt in his life simply because he was off of addictive substances. [*Id.*]. His treatment provider agreed that the Plaintiff "show[ed] no signs or symptoms of bipolar or ADHD." [*Id.*]. Following discharge from Cornerstone of Recovery in August 2007, the Plaintiff was again recommended to continue treatment through individual counseling and to establish care with a psychiatrist [Tr. 320], but the record is absent of any further mental health treatment prior to the Plaintiff's last date insured of December 31, 2008.

The Plaintiff also maintains that he satisfies the criteria for paragraphs B(2) and B(3) because he has marked difficulties in social functioning and maintaining concentration, persistence, or pace. [Doc. 8 at 11]. "Marked" is defined as more than moderate but less than

8

extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The Plaintiff relies on the same symptoms and treatment records described above, but the Court finds them unpersuasive for the same reasons already noted, including that the treatment records form Peninsula Hospital predate the Plaintiff's alleged onset date and the symptoms reported were attributed to, or were at least exacerbated by, the Plaintiff's substance abuse issues and his failure to take prescribed medication.

Moreover, the Court finds substantial evidence supports the ALJ's paragraph B findings that the Plaintiff was no more than moderately limited in his activities of daily living, social functioning, concentration, persistence, or pace, and exhibited no evidence of repeated episodes of decompensation. [Tr. 45]. With specific regard to the Plaintiff's contention that he has marked limitations within the area of social functioning, the ALJ found that the Plaintiff retained some capacity to interact appropriately and communicate effectively with others as the Plaintiff was able to grocery shop and visits with family, including caring for his 12-year-old daughter several times a month and throughout the summer. [Tr. 45, 409]. Although the Plaintiff reported he avoided his friends, he explained it was because they use drugs. [*Id.*]. As to the Plaintiff's concentration, persistence, or pace, the ALJ found that the Plaintiff demonstrated an ability to perform at least simple, routine, one to two step tasks as consultative examiner Alice K. Garland, M.S., indicated that the Plaintiff could recall two recent presidents as well as the current president, his thought process was organized, he could perform serial threes, he demonstrated good motor activity with no indication of a thought disorder, and he could handle his finances, watch movies, cook, and perform household chores. [Tr. 45, 408-10].

Finally, as to the paragraph C criteria, the Plaintiff asserts that he meets the requirements for paragraph C(2) due to his multiple admissions for psychological services from Peninsula Hospital and outpatient treatment thereafter from Cornerstone of Recovery. [Doc. 21 at 8]. "[P]art

9

C.2 requires deterioration under conditions that would be minimally stressful for a normal person." David A. Morton, III, M.D., *Medical Issues in Social Security Disability* 12-23 (Jim Pawell ed., 13th ed. 2016). Treatment from Peninsula Hospital, which precedes the Plaintiff's alleged onset date by over a year, as well as subsequent treatment with Cornerstone of Recovery, not only fail to demonstrate such requisite episodes of decompensation, but they also fail to demonstrate a chronic affective disorder that has lasted at least two years' duration as required by paragraph C. In fact, the only mental health treatment the Plaintiff received during the relevant time period under review was outpatient treatment from Cornerstone of Recovery, which treatment notes demonstrate that the Plaintiff was doing very well as a result of his sobriety and he did not appear to exhibit any adverse symptoms, including symptoms associated with his bipolar diagnosis or ADHD. [Tr. 319].

Accordingly, the Court finds that substantial evidence supports the ALJ's step three finding, and the Plaintiff's allegations to the contrary are without merit.

**B.     RFC Determination**

The Plaintiff also asserts that the ALJ's RFC determination is not supported by substantial evidence.

In the disability determination, the ALJ concluded that the Plaintiff could perform a reduced range of light work with the following exceptions: occasional climbing of stairs but no climbing of ladders; frequent handling and fine manipulation with the left arm and reaching with the right arm; occasional reaching with both arms; simple work and few changes; can tolerate no more than moderate stress; and occasional interaction with others. [Tr. 46].

The ALJ is responsible for making an RFC determination after reviewing all the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, No. 12-6136, 2013 WL 4767020, at *8 (6th

10

Cir. Sept. 5, 2013). This includes a review of both medical and non-medical evidence. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009). A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

The Plaintiff argues that his RFC is more analogous to sedentary work, which under the Medical-Vocational Guidelines would direct a finding of "disabled." [Doc. 21 at 9-10]. The Plaintiff maintains that given his problems with his arms and hands, difficulty walking, the need to shift positions, as well as an inability to get along with others and concentrate and focus, he would be precluded from performing light work. [*Id.* at 10]. The Court is not persuaded.

The Plaintiff's generalized argument that he can, at most, perform sedentary work fails to demonstrate reversible error by the ALJ. *See* 42 U.S.C. § 423(d)(5)(A) (claimants bear the burden of demonstrating that they are disabled). The Plaintiff does not specify what evidence contradicts the ALJ's RFC finding, how the ALJ erred in assessing the medical evidence of record, or why the RFC determination is inconsistent with the demands of light work as defined by the regulations and agency rules. *See Montgomery v. Colvin*, No. 5:12–245–DCR, 2013 WL 5232902, at *4 (E.D. KY. Sept.16, 2013) ("Because [plaintiff] does not specify which [evidence] the ALJ allegedly failed to consider, the Court is not required to undertake an open-ended review of the entirety of the administrative record."). The Plaintiff only cites to his hearing testimony and subjective allegations reported to a consultative examiner as evidence that he can only perform sedentary work. [Doc. 21 at 4]. "However, [a claimant's] statements about [] pain or other symptoms will not alone establish that [the claimant is] disabled. . . ." 20 C.F.R. § 404.1529(a).

Nonetheless, the Court has carefully reviewed the ALJ's RFC determination and the evidence relied upon therein and finds that substantial evidence supports the ALJ's decision. The

11

ALJ based her RFC determination on the lack of objective evidence supporting the Plaintiff's subjective allegations, the Plaintiff's conservative and sporadic treatment, the Plaintiff's failure to follow treatment recommendations, the Plaintiff's ability to perform a variety of daily living activities, and medical opinions demonstrating a greater ability to perform work-related activities than alleged by the Plaintiff. [Tr. 47-51]. The ALJ was not obligated to include more restrictive limitations in the RFC determination, such as a need to shift positions, where said limitations are not substantiated by the record as a whole. Moreover, during the administrative hearing, a vocational expert testified that given the Plaintiff's RFC he could perform the jobs of laundry folder, marker, and vending machine tender [Tr. 52], all of which are defined as "light work" by the *Dictionary of Occupational Titles*. §§ 319.464-014, 1991 WL 672766; 369.687-018, 1991 WL 673072; 781.687-042, 1991 WL 680870. "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).

Although the Plaintiff may disagree with the ALJ's RFC determination, the Court must affirm the ALJ's decision if it is supported by substantial evidence. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached."). Accordingly, the Court finds the Plaintiff's conclusory argument that the RFC determination is more consistent with sedentary work is insufficient to demonstrate reversible error by the ALJ.

12

## VI. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 20**] is **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] is **GRANTED**. The decision of the Commissioner will be **AFFIRMED**, and the Clerk of Court will be directed to **CLOSE** this case.

**IT IS SO ORDERED.**

ENTER:

*/s/ Bruce Guyton*
United States Magistrate Judge